# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RELIOUS CARTER, | / | 1:05-cv-00765-LJO-GSA (PC) |
| Plaintiff, | / / | FINDINGS AND RECOMMENDATION THAT FIRST AMENDED COMPLAINT BE |
| v. | / / | DISMISSED WITH PREJUDICE FOR FAILURE/INABILITY TO STATE A CLAIM |
| WOODFORD, et.al., | / / | [Doc. 10] |
| Defendants. | / / | |

**I.  FINDINGS**

**A.  Procedural History**

Relious Carter ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed his original complaint on June 13, 2005, which, on October 2, 2006, was dismissed with leave to amend. (Docs. 1 & 9.) Subsequently, Plaintiff filed his first amended complaint on November 2, 2006. (Doc. 10.)

**B.  Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

1

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

### C. Plaintiff's Amended Complaint

Plaintiff is a state prisoner, currently incarcerated at California Substance Abuse Treatment Facility and State Prison ("CSATF-SP"), in Corcoran California – where the acts he complains of allegedly occurred.

Plaintiff names as defendants: Director Jean Woodford; Warden Derral Adams; Health Services Administrator K. Allison; Chief Medical Officer Dr. D. Deering; Appeals Analyst G. Miller; Dr. D. Kyle; and Dr. D. Dang.

Plaintiff alleges that: on September 13, 2001, he was transferred from High Desert State Prison to CSTAF-SP and sought medical care shortly after his arrival; he was examined by Dr. Dang on five dates between November 30, 2001 and June 18, 2002; at each visit, Plaintiff requested diagnostic blood work and complained of back pain, ankle pain, itching all over his body, and a general "disease of the body;" and Dr. Dang responded at each visit by prescribing treatment and medications for pain and allergies, but refusing to order diagnostic blood work; on December 10, 2002, Plaintiff was transferred from Corcoran SHU to CSATF; Plaintiff submitted health care service requests on December 10, 2002, January 6, 2003, and January 8, 2003; on

...

January 13, 2003, Dr. Kyle "visited" Plaintiff; Dr. Kyle was hostile towards Plaintiff, but Plaintiff was able to advise Dr. Kyle that his right big toe was painful, at time his right foot would swell so as to necessitate assistance when ambulating, his vision was blurry, and that he had a skin condition; Plaintiff requested blood work and a cane/crutches; Dr. Kyle denied the requested blood work and cane/crutches, but noted Plaintiff's dermatitis; during the inmate appeals process, Plaintiff became depressed, without the strength or will to be active on a daily basis; on June 17, 2003, Plaintiff requested medical attention, in response to which Dr. Kyle did not visit Plaintiff; on June 18, 2003 Plaintiff again requested medical attention and was taken by litter to nurse T. Domingo (not a named defendant) who gave Plaintiff a shot and a source drink; Plaintiff was returned to his cell; on June 19, 2003, Plaintiff requested, and was taken to the medical facility where he was seen by Dr. Kyle who determined Plaintiff needed a higher level of care and had him transported to the correctional treatment center emergency room; once there, he was examined by Dr. Snow (not a named defendant) who had Plaintiff transferred to San Joaquin Community Hospital after determining Plaintiff was possibly suffering from diabetic ketoacidosis; and Plaintiff filed numerous appeals regarding his medical issues which were investigated, processed, and decided by Dr. Kyle, Dr. Deering, K. Allison, and G. Miller. Plaintiff seeks monetary damages.

     **D.**     **Plaintiff's Claims**

          *1. Eighth Amendment - Medical Care*

Plaintiff alleges that Dr. Kyle and Dr. Dang violated his constitutional rights via their involvement in his medical care and treatment. (Doc. 10, pp. 5-11.)

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). A prison

official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Commr's, 766 F.2d 404, 407 (9th Cir. 1985)).

Plaintiff has not alleged any facts which would support a claim that any of the named defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health . . . ." Farmer, 511 U.S. at 837. "Deliberate indifference is a high legal standard." Toguchi, 391 F.3d at 1060. "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). Further, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a §1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted).

Plaintiff alleges that: he was examined by Dr. Dang on five dates between November 30, 2001 and June 18, 2002; at each visit, Plaintiff requested diagnostic blood work and complained of back pain, ankle pain, itching all over his body, and a general "disease of the body;" and Dr.

4

1  Dang responded at each visit by prescribing treatment and medications for pain and allergies, but
2  refusing to order diagnostic blood work.  Plaintiff implies by his allegations that Dr. Dang should
3  have ordered diagnostic blood tests.  Dr. Dang's failure to order the diagnostic blood work that
4  Plaintiff felt was required does not show deliberate indifference by Dr. Dang to Plaintiff's serious
5  medical need, but rather amounts to a difference of opinion between a prisoner-patient and prison
6  medical authorities regarding treatment which does not give rise to a §1983 claim.  Franklin.

7         As to Dr. Kyle, Plaintiff alleges that: he submitted health care service requests on
8  December 10, 2002, January 6, 2003, and January 8, 2003; on January 13, 2003, Dr. Kyle
9  "visited" Plaintiff; Dr. Kyle was hostile towards Plaintiff, but Plaintiff advised Dr. Kyle that his
10 right big toe was painful, at times his right foot would swell so as to necessitate assistance when
11 ambulating, his vision was blurry, and that he had a skin condition; Plaintiff requested blood
12 work and a cane/crutches; Dr. Kyle denied the requested blood work and cane/crutches, but noted
13 Plaintiff's dermatitis; Plaintiff became depressed, without the strength or will to be active on a
14 daily basis; on June 17, 2003, Plaintiff requested medical attention, in response to which Dr.
15 Kyle did not visit Plaintiff; on June 18, 2003 Plaintiff again requested medical attention and was
16 taken by litter to nurse T. Domingo (not a named defendant) who gave Plaintiff a shot and a
17 source drink; Plaintiff was returned to his cell; on June 19, 2003, Plaintiff requested, and was
18 taken to the medical facility where he was seen by Dr. Kyle who determined Plaintiff needed a
19 higher level of care and had him transported to the correctional treatment center emergency
20 room; and once there, he was examined by Dr. Snow (not a named defendant) who had Plaintiff
21 transferred to San Joaquin Community Hospital after determining Plaintiff was possibly suffering
22 from diabetic ketoacidosis.  Plaintiff implies by his allegations that Dr. Kyle should have ordered
23 diagnostic blood tests and a cane/crutches.  Dr. Kyle's failure to order the diagnostic blood work,
24 and a cane/crutches that Plaintiff felt was required does not show deliberate indifference by Dr.
25 Kyle to Plaintiff's serious medical need, but rather amounts to a difference of opinion between a
26 prisoner-patient and prison medical authorities regarding treatment that does not give rise to a
27 §1983 claim.  Franklin.

28         Plaintiff's disagreement with the diagnosis or treatment provided by Dr. Dang and/or Dr.

1  Kyle do not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th
2  Cir. 1989). Plaintiff has failed to show that Dr. Dang or Dr. Kyle either chose a course of
3  treatment that was medically unacceptable under the circumstances, or denied him necessary
4  medical care; and that such course was chosen in conscious disregard of an excessive risk to
5  Plaintiff's health, or that such course caused him further harm. Further, Plaintiff fails, and
6  appears unable to show that any delay that he might be alleging (aside from that caused by his
7  depression and lack of strength or will to be active on a daily basis) actually led to further harm.
8  McGuckin. Thus, Plaintiff's claims against both Dr. Dang and Dr. Kyle are subject to dismissal
9  with prejudice.

### 2. Inmate Appeals

Plaintiff's allegations against defendants K. Allison, Dr. Deering, and G. Miller relate to the processing of his inmate appeals/grievances. (Doc. 10, pp. 12-15.) Plaintiff also alleges that Dr. Kyle interviewed him for the first formal level of one of his inmate appeals.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest

requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) citing Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir.1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir.1996).

Thus, since he has neither a liberty interest, nor a substantive right in inmate appeals, Plaintiff fails, and is unable, to state cognizable claims against defendants K. Allison, Dr. Deering, Dr. Kyle, and G. Miller for the processing and/or reviewing of his 602 inmate appeals – all such claims are subject to dismissal with prejudice.

### 3. *Supervisory Liability*

Plaintiff's names supervisory defendants Director Woodford and Warden Adams.

Supervisory personnel are generally not liable under Section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979). To state a claim for relief under Section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory Defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"

Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (*internal citations omitted*); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

Plaintiff claims that Director Woodford is responsible for the failure to appropriately review Plaintiff's appeals by the appeals examiner, D.L. Porter (who is not a named defendant). (Doc. 10, pp. 17-18.) This respondeat superior claim is not cognizable as a constitutional claim. Plaintiff further claims that Director Woodford is responsible for promulgating, implementing, monitoring, enforcing, and/or supervising the enforcement of policies and procedures affecting the medical care of all inmates within the CDC. Plaintiff's allegations fail to state cognizable claims relating to his medical care. Thus, there are no constitutional violations that Director Woodford could have known of and failed to prevent; nor could Director Woodford have promulgated or implemented a policy so deficient that the policy itself was a repudiation of constitutional rights since none of Plaintiff's constitutional rights were violated.

Plaintiff's claims that Warden Adams "was responsible for the promulgation and/or implementation of the policies and operational procedures at CSATF-SP for the supervision of subordinate personnel, medical care needs of all inmates, including plaintiff, and the reviewing of medial appeals filed at CSATF-SP by all inmates" and that he "failed to manage subordinates who caused the unlawful condition and/or event." (Doc. 10, pg. 16-17.) Since Plaintiff fails, and appears unable, to state a cognizable claim for any violations of his constitutional rights, he cannot state a claim against Warden Adams for the promulgation and/or implementation of policies that did not cause his constitutional rights to be infringed upon. Further, Plaintiff's claims that Warden Adams failed to manage subordinates are non-cognizable since premised on respondeat superior.

Thus, Plaintiff fails, and is unable, to state cognizable claims against Director Woodford and Warden Adams such that all claims against them are subject to dismissal with prejudice.

## II.     RECOMMENDATION

The Court finds that Plaintiff has failed to state a claim against any of the named

defendants.  Accordingly, it is HEREBY RECOMMENDED that this entire action be dismissed with prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).

Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 9, 2008**              **/s/ Gary S. Austin**
                                            UNITED STATES MAGISTRATE JUDGE